IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**GABRIELA MARTINEZ DE LA CRUZ**                              **PLAINTIFF**

v.                                                    **CAUSE NO. 1:18cv123-LG-RHW**

**FORREST WELLS, M.D., and
GULF COAST PLASTIC AND
RECONSTRUCTIVE SURGERY, PLLC**                                    **DEFENDANTS**

## ORDER CONCERNING THE PARTIES' MOTIONS
## TO EXCLUDE EXPERT TESTIMONY

**BEFORE THE COURT** are the defendants' [88] Motion to Exclude Certain Testimony of Dr. Eric George, the defendants' [90] Motion to Exclude Certain Testimony of Dr. Sonny Bal, the plaintiff's [93] Motion to Exclude Certain Proposed Opinion Testimony of Eric J. Wyble, M.D., and the plaintiff's [95] Motion to Exclude Certain Proposed Opinion Testimony of Thomas M. Barbour, III, M.D. The parties have fully briefed the Motions. After reviewing the submissions of the parties, the record in this matter, and the applicable law, the Court finds that the Motions should be granted in part and denied in part as set forth below.

## BACKGROUND

In January 2016, the plaintiff notified her employer that she was suffering wrist pain while performing her work as an electrician. She was referred for a nerve conduction study, which indicated that she suffered from bilateral carpal tunnel syndrome, moderate in degree. On February 22, 2016, the defendant Forrest Wells, M.D., performed a carpal tunnel release (CTR) procedure on the plaintiff's right wrist. Post-surgery, the plaintiff complained of pain, numbness, and an

electrical-shock-type feeling in her right hand and wrist. She also developed blisters on her right hand in late March 2016, but she explained that she had not suffered any burns to her hand.

On April 20, 2019, Dr. Wells referred the plaintiff for a second nerve conduction study, which was performed on May 18, 2016. This nerve conduction study indicated that the plaintiff's carpal tunnel syndrome had worsened since the surgery. Dr. Wells recommended that the plaintiff obtain a second opinion from a physician located in Mobile, Alabama, but the plaintiff chose to see Dr. Alexander Blevens of Bienville Orthopaedic Specialists, who performed a second carpal tunnel release on the plaintiff's right wrist. During the surgery, Dr. Blevens located a neuroma, or scar tissue. After dissecting the neuroma, Dr. Blevens observed a complete or near complete transection of the median nerve. He sutured the nerve endings together in an attempt to improve the function in the plaintiff's right hand.

In February 2017, Dr. Blevens diagnosed the plaintiff with adhesive capsulitis in her right shoulder and complex regional pain syndrome type 2 of the right upper extremity. Dr. Blevens attributes these conditions to the injury to the plaintiff's median nerve. He referred the plaintiff to pain management and a psychologist or psychiatrist due to the pain she experienced due to the nerve injury. The plaintiff has been diagnosed with depression, and she has been unable to return to her employment as an electrician.

The plaintiff filed this lawsuit against Dr. Wells. She has also sued Gulf Coast Plastic and Reconstructive Surgery, PLLC ("GCPRS"), on the basis of

vicarious liability for the alleged negligence of its managing member, Dr. Wells. The plaintiff claims that Dr. Wells negligently damaged the median nerve in her right wrist during the CTR surgery. She also alleges that Dr. Wells was negligent in failing to timely discover and treat the injury to the nerve. The parties have each filed motions to exclude some of the proposed testimony of expert witnesses designated to give opinions in the case.

## DISCUSSION

"To prove medical malpractice, the plaintiff must prove a duty to conform to a specific standard of conduct, a failure to conform to that standard, and an injury proximately caused by the breach of duty." *Jackson HMA, LLC v. Harris*, 242 So. 3d 1, 4 (Miss. 2018). Expert testimony must be used to (1) identify and articulate the requisite standard of care that was not complied with, and (2) establish that the failure was the proximate cause, or proximate contributing cause, of the alleged injuries." *King v. Singing River Health Sys.*, 158 So. 3d 318, 324 (Miss. Ct. App. 2014).

Rule 702 of the *Federal Rules of Evidence* provides that an expert witness "who is qualified as an expert by knowledge, skill, experience, training, or education" may testify if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The party offering the proposed expert must prove by a preponderance of the evidence that the expert's proffered testimony satisfies Rule 702. *Mathis v. Exxon Corp.*, 302 F.3d 448, 459-60 (5th Cir. 2002). "An expert witness's testimony should be excluded if the district court 'finds that the witness is not qualified to testify in a particular field or on a given subject.'" *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199 (5th Cir. 2016) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)). In addition, "expert testimony is admissible only if it is both relevant and reliable." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993). To be reliable, an expert's opinions must be based on sufficient facts or data and must be the product of reliable principles and methods. Fed. R. Evid. 702(b), (c).

"Ordinarily, a key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested." *Daubert*, 509 U.S. at 593. "Scientific methodology today is based on generating hypotheses and testing them to see if they can be falsified; indeed, this methodology is what distinguishes science from other fields of human inquiry." *Id.* Other factors that can be considered include whether the proposed theory or technique "has been subjected to peer review and publication"; whether it has been evaluated in the light of "potential rate[s] of error"; and whether the theory has been accepted in the "relevant scientific community." *Id.* at

593-94. "This reliability analysis must remain flexible: not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). "Although the *Daubert* analysis is applied to ensure expert witnesses have employed reliable principles and methods in reaching their conclusions, the test does not judge the expert conclusions themselves." *Id.* Nevertheless,

> [n]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion offered.

*Atl. Specialty Ins. Co. v. Porter, Inc.*, 742 F. App'x 850, 855 (5th Cir. 2018).

## I. DEFENDANTS' MOTIONS TO EXCLUDE DR. GEORGE AND DR. BAL

The plaintiff designated Dr. George as an expert in the field of hand surgery. In his report, he offers the following opinions based upon a reasonable degree of medical probability:

> 1) Although post-operatively Ms. De La Cruz continued to complain of pain, as well as worsening situation [sic], and the formation of blisters was documented, Dr. Wells failed to timely consider and diagnose an injury to the median nerve;
> 2) The formation of blisters on the hand following carpal tunnel decompression are pathognomonic of a nerve injury. The standard of care requires the physician to investigate, in an expedited fashion, the possibility of a nerve injury. Such an investigation may include a repeat nerve study or better yet, return to the operating room for exploration and repair. Dr. Wells failed to appreciate the significance of the continuing complaints of pain and worsening sensation, as well as the formation of blisters and the relationship of a likely nerve injury; and
> 3) Dr. Wells failed to timely treat the injury to the right median nerve or otherwise provide an appropriate and timely referral for treatment.

(Defs.' Mot. Ex. A, at 6, ECF No. 88-1.)

The plaintiff has also designated Dr. Bal as an expert in the field of orthopedic surgery. Dr. Bal's opinions are too numerous to list in full, but he offers the following summary:

> It is my opinion, based upon reasonable medical probability, that the above-cited median nerve injury suffered by Ms. Cruz during the CTR operation was the result of negligent performance of the operation by Dr. Wells. Once the nerve had been cut, Dr. Wells additionally fell below the standard of care in not identifying and repairing the injury during the CTR operation itself. Next, when Ms. Cruz clearly failed to improve and had continuing pain and numbness after CTR, Dr. Wells was negligent in not responding to her complaints, and in not instituting a prompt workup and exploratory surgery to ensure that the nerve had not been injured. In lieu of repeat surgery, Dr. Wells also had the option of obtaining a MRI scan of the wrist to trace the median nerve and ensure that it was in continuity; in failing to do this, Dr. Wells fell below the standard of care. But for the negligent conduct of Dr. Wells, Ms. Cruz would have had an uneventful recovery, with unlimited use of her right hand and wrist. As it stands now, Ms. Cruz has suffered permanent damages; her hand and wrist will never return to normal.

(Defs.' Mot. Ex. A, at 6, ECF No. 90-1.)

**A. OPINIONS REGARDING CHANCE OF RECOVERY**

The defendants ask the Court to exclude Dr. George and Dr. Bal's opinions concerning the plaintiff's chance of recovery had Dr. Wells diagnosed and treated the nerve injury earlier. Dr. George's opinion on this subject is:

> The failure of Dr. Wells to meet the standard of care resulted in the loss of a timely repair and greatly diminishing [sic] the likelihood of a functional recovery. Had Ms. De La Cruz received appropriate care, more probable than not, she would have experienced a substantially better outcome, including better use of her right upper extremity with sensation of the hand.

(Defs.' Mot. Ex. A, at 6, ECF No. 88-1.) Dr. Ball provides the following pertinent opinions: 1) "Had the injury been recognized acutely, repair would have been easier, with improved chance of recovery"; (2) "Prompt referral and repeat surgery to explore the wrist are required by the standard of care since earlier diagnosis and repair are associated with a better outcome, versus a delay of several months as Ms. Cruz had to endure"; and (3) "While the precise window of opportunity to repair the nerve is unknown, the literature is clear that early diagnosis and repair is associated with improved outcomes, over delayed diagnosis and later repair." (Defs.' Mot. Ex. A, at 5, ECF No. 90-1.) The defendants argue that these causation opinions by Dr. George and Dr. Bal are irrelevant and unreliable.

The Mississippi Court of Appeals has held:

> On the critical causation question, recovery is allowed only when the failure of the physician to render the required level of care results in the loss of a reasonable probability of substantial improvement of the plaintiff's condition. There must be proof of a greater than fifty percent chance of a better result than was in fact obtained. This greater than fifty percent opinion must be backed up by specific facts.

*King v. Singing River Health Sys.*, 158 So. 3d 318, 324 (Miss. Ct. App. 2014) (alterations and internal quotation marks omitted). The defendants argue that Dr. George and Dr. Bal's opinions concerning the probability of a better recovery are irrelevant and unreliable because their opinions are too vague to meet this standard under Mississippi law. The defendants assert that Dr. George has failed to specify the time period at which treatment of the plaintiff's nerve injury would have yielded a better recovery. The defendants also state that Dr. George has failed to answer the question of whether the plaintiff's recovery and current abilities would have

been any different if the nerve repair surgery had been performed sooner. The defendants further argue that the terminology used by Dr. Bal is too imprecise and vague to adequately quantify the plaintiff's chance of recovery from earlier nerve repair. The defendants also assert that Dr. Bal's opinions are ipse dixit, particularly since he fails to cite which literature supports his opinion.

Both Dr. Bal and Dr. George stated that their opinions are based on a reasonable degree of medical probability. Dr. George opined that earlier treatment would have yielded a reasonable probability of substantial improvement, which if believed by a jury would be sufficient to support a finding of causation. Dr. Bal did not initially specify the extent of improvement the plaintiff would have experienced with earlier treatment, but he has clarified via affidavit that improvement would have been substantial. He also further explained the basis for his opinions. The defendants have not moved to strike this affidavit. The Court finds that the opinions of Dr. Bal and Dr. George concerning the extent of improvement that the plaintiff would have experienced with earlier treatment are reliable and relevant. The defendants' arguments are better suited for cross-examination. As a result, the defendants' Motion to Exclude Dr. George's opinion is denied. The defendants' Motion to Exclude Dr. Bal's opinions are also denied to this extent.

**B. DR. BAL'S OPINION THAT A TRANSECTED MEDIAN NERVE IS NOT AN ACCEPTED RISK OF CTR SURGERY**

The defendants ask the Court to strike the following opinion in Dr. Bal's report:

> 1. Transection of the median nerve, whether complete or nearly
> complete, is not an accepted risk of an open carpal tunnel operation,
> such as Ms. Cruz underwent.  Complete division of the median nerve,
> as encountered by Dr. Blevens, cannot occur in the absence of surgeon
> negligence.  Careful attention to detail, including protecting the
> median nerve always ensures that the nerve will be safe during CTR.

(Defs.' Mot. Ex. A, at 5, ECF No. 90-1.)   The defendants argue that Dr. Bal's opinions constitute inadmissible ipse dixit because they are not supported by peer-reviewed medical literature and are not generally accepted in the medical community by physicians who perform CTR surgeries.

Generally, medical experts are not required to identify a specific article or study to support their opinions. *Mem'l Hosp. at Gulfport v. White*, 170 So. 3d 506, 509 (Miss. 2015).  Nevertheless, the Mississippi Supreme Court has recognized an exception, holding that medical literature must be cited where the opposing party attacks the opinion as not accepted in the medical community.  *Id.*  "[W]hen an expert renders an opinion that is attacked as "not accepted within the scientific community, the party offering the expert's opinion must, at a minimum, present the trial court with some evidence indicating that the offered opinion has some degree of acceptance in the scientific community." *Norman v. Anderson Reg'l Med. Ctr.*, 262 So. 3d 520, 525 (Miss. 2019).

In the present case, the defendants argue that Dr. Bal's opinion is not accepted in the medical community, citing articles providing that median nerve injury is a risk of CTR surgery.  Dr. Bal has not cited any support for his opinion that median nerve transection cannot occur in the absence of negligence.  As a result, this opinion, which is preceded by the numeral one in Dr. Bal's report, must

be excluded as unreliable. The defendants' Motion to Exclude Dr. Bal's opinions is granted to this extent. Dr. Bal will be permitted to present the remainder of his opinions at trial.

## II. PLAINTIFF'S MOTIONS TO EXCLUDE DR. WYBLE AND DR. BARBOUR

The defendants designated Dr. Eric J. Wyble as an expert in the field of plastic and reconstructive surgery. Dr. Wyble's discussion of his opinions is lengthy, but he summarizes his opinions as follows:

> Dr. Wells did not deviate from the applicable standard of care during the February 22, 2016 carpal tunnel release surgery as he took appropriate steps to protect the median nerve and an injury to the median nerve is a known risk of this procedure and apparently occurred. Additionally, it is my opinion that Dr. Wells did not unreasonably delay in referring the patient for a follow up nerve conduction study and subsequent referral for a second opinion. It was reasonable for Dr. Wells to refer the patient for physical therapy and when additional progress was not made, then refer the patient for subsequent testing and a second opinion. The treatment during this approximately 3-month period of time was appropriate and met the standard of care. Even if this was considered a delay in treatment, which I disagree with, it would be pure speculation to conclude that if [a] second surgery was performed sooner, a better recovery would have been made. Last, while the patient did have some initial impairment and limitation to her right upper extremity due to the median nerve injury, and cannot return to work as an electrician, the patient is now capable of returning to work in jobs that do not require the tactile function as an electrician. In my opinion, no further pain management or psychotherapy is needed.

(Pl.'s Mot. Ex. K, at 11, ECF No. 93-11.)

The defendants also designated Dr. Thomas M. Barbour, III, as an expert in the field on orthopedic surgery. He provides the following summary of his opinions in his report:

> In summary, in my opinion[,] Dr. Wells did not deviate from the standard of care during the February 22, 2016 carpal tunnel surgery as he took appropriate steps to protect the median nerve and an injury to the median nerve is a known, although rare, risk of this procedure. Additionally, it is my opinion that even if there was a delay in treatment and/or referral by Dr. Wells for follow up surgery, it would be speculation to suggest that if the second surgery was performed sooner, a better outcome would have been made. Similarly, it is speculation that the patient would not have developed CRPS with earlier treatment of the nerve injury. Last, while the patient does have some impairment to her right upper extremity due to the median nerve injury, and cannot return to work as an electrician, the patient is capable of otherwise returning to work that may not require tactile sensation as that of an electrician. In my opinion, no further pain management or psychotherapy is warranted.

(Pl.'s Mot. Ex. K, ECF 95-11.)

## A. DR. WYBLE'S OPINION THAT IT WOULD BE SPECULATION TO SAY THAT DR. WELLS INJURED THE PLAINTIFF'S NERVE DURING THE SURGERY

The plaintiff asks the Court to exclude the following opinions included in Dr. Wyble's report as speculative and irrelevant:

> While I agree that the patient's median nerve was injured, I cannot say, to a reasonable degree of medical probability that it occurred during the initial surgery performed by Dr. Wells. Nor can I say, to a reasonable degree of medical probability that there was a complete or near complete transection of [the] median nerve during the initial surgery versus a minor trauma to [the] median nerve during this surgery that caused a neuroma to grow, which put pressure on the nerve over time. There is also a possibility that there was some sort of trauma to the nerve weeks after the surgery, as numbness was not present initially during the post-op period, which may suggest either a minor median nerve injury or a post-op injury. It is currently, and was at the time that Dr. Blevens performed the second surgery, pure speculation to offer an opinion that Dr. Wells actually transected or nearly transected the median nerve during the February 22, 2016 surgery.

(Pl.s' Mot. Ex. K, at 10, ECF No. 93-11.)

The first three sentences quoted above must be excluded, because Dr. Wyble admits that he cannot offer an opinion as to the cause of the plaintiff's injury to a reasonable degree of medical probability. In addition, Dr. Wyble's statements that he cannot offer an opinion to a reasonable degree of medical certainty will not be helpful to a jury.

The admissibility of the following statement poses a more complicated question: "It is currently, and was at the time that Dr. Blevens performed the second surgery, pure speculation to offer an opinion that Dr. Wells actually transected or nearly transected the median nerve during the February 22, 2016 surgery." (*Id.*) In other words, Dr. Wyble opines that there is no way to know what caused the plaintiff's injury. Dr. Wyble has not explained the basis for this opinion, aside from his admitted speculation that a post-surgery injury could have caused the nerve damage. As a result, the Court finds that this opinion is unreliable and inadmissible.

**B. OPINIONS CONCERNING POSSIBLE LONG-TERM NERVE COMPRESSION**

Both Dr. Barbour and Dr. Wyble discussed the effects that long-term nerve compression or carpal tunnel syndrome can have on a patient. The plaintiff argues that these opinions are irrelevant. Dr. Wyble stated:

> It is also my opinion that Dr. Wells appropriately treated the patient in his follow up appointments after the February 22, 2016 surgery. A patient with a long-standing carpal tunnel syndrome may have persistent numbness and tingling even after carpal tunnel release surgery, which is likely due to permanent injury to the nerve as a consequence of long-standing compression and therefore more

-12-

significant and permanent nerve damage due to the compression that is severe enough that sensation may never be restored to normal.

(Pl.'s Mot. Ex. K, at 8-9, ECF No. 93-11.) Similarly, Dr. Barbour states, "If there was any nerve damage before the procedure due to a long-standing carpal tunnel syndrome, a full recovery to a normal hand may not be possible." (Pl.'s Mot. Ex. K, at 8, ECF No. 95-11.)

The defendants admit that there is no indication that the plaintiff suffered from "long-standing carpal tunnel syndrome" or "long-standing compression." However, the defendants assert that the statements cited above are not opinions but necessary background information. The Court disagrees. The parties agree that long-standing carpal tunnel syndrome or nerve compression are not at issue in this case. Discussion of the possible effects of these problems would be irrelevant and would only serve to confuse the jury. The plaintiff's Motions to Exclude Dr. Barbour and Dr. Wyble are granted to this extent.

## C. OPINIONS BASED ON ANOTHER DOCTOR'S DISCUSSION OF SURVEILLANCE VIDEO

The plaintiffs also ask the Court to exclude Dr. Wyble and Dr. Barbour's opinions that were based on Dr. Donald Faust's description of video surveillance taken of the plaintiff.[1] Dr. Barbour's report contains the following discussion:

> With regard to the records and IME of Dr. Faust, he reported that surveillance video from October 2017 showed the plaintiff being capable of several activities involving the use of her right hand, arm, and shoulder. Based on my review of these records, I agree with Dr.

---

[1] Dr. Faust conducted an independent medical examination of the plaintiff as part of her worker's compensation case. The surveillance at issue in this Motion was also taken as part of her worker's compensation case.

-13-

> Faust that while the plaintiff does have some impairment to her right
> upper extremity and that she likely cannot return to work as an
> electrician, the patient has made some recovery and improvement of
> her condition based on his description of the video footage. But, due to
> her exaggerated responses during the examination by Dr. Faust, as
> well as the October 2017 surveillance video footage, it is impossible to
> objectively know what that improvement is. Based on Dr. Faust's
> description of the video footage, the patient has some use of her right
> hand, can handle some exposure to heat and cold, and is capable of
> operating a vehicle and other ordinary household appliances. I also
> agree that based on Dr. Faust's description of the October 2017
> surveillance video footage of the patient, she did not show marked
> symptoms of CRPS affecting the right hand.

(Pl.'s Ex. K, at 9-10, ECF No. 95-11.) Based on Dr. Faust's description of the surveillance video, Dr. Barbour also opined that the plaintiff interacts well with others and that further psychotherapy and psychotropic drugs are unnecessary. (*Id.* at 10.) Dr. Wyble offers very similar opinions concerning the plaintiff's recovery from the nerve injury as well her psychological state based on Dr. Faust's description of the surveillance video.

The plaintiff argues that these experts' opinions based on Dr. Faust's description of the surveillance are unreliable. The defendants assert that the surveillance video was not produced in time for their experts to review it. The defendants intend for their experts to view the surveillance video during trial. They also assert that medical experts frequently must rely on the observations of other physicians when making their opinions.

The Federal Rules of Evidence provide:

> An expert may base an opinion on facts or data in the case that the
> expert has been made aware of or personally observed. If experts in
> the particular field would reasonably rely on those kinds of facts or
> data in forming an opinion on the subject, they need not be admissible

-14-

> for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703. Generally, "an expert is permitted wide latitude to offer opinions, including those not based on firsthand knowledge or observation." *Daubert*, 509 U.S. at 592. "[W]hen the expert witness has consulted numerous sources, and uses that information, together with his own professional knowledge and experience, to arrive at his opinion, that opinion is regarded as evidence in its own right and not as hearsay in disguise." *United States v. Lockhart*, 844 F.3d 501, 511 (5th Cir. 2016).

This Court typically does not permit expert witnesses to observe a trial, so the experts will not be able to provide testimony based on their observation of the video during trial. Nevertheless, the Court recognizes that medical experts routinely rely on the observations of other medical providers; thus, Dr. Barbour and Dr. Wyble will be permitted to present opinions that are based on Dr. Faust's observations as long as the requirements of Fed. R. Evid. 703 are followed. The plaintiff's Motions to Exclude are denied to this extent; her concerns can be addressed through cross-examination. *See Daubert*, 509 U.S. at 596 (holding that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence").

## D. PSYCHIATRIC AND PAIN MANAGEMENT OPINIONS

The plaintiff argues that Dr. Wyble and Dr. Barbour's opinions concerning whether the plaintiff needs additional psychotherapy, psychotropic drugs, and pain management should be excluded because these experts are not qualified to give these opinions.

The Fifth Circuit has explained:

> Whether an individual is qualified to testify as an expert is a question of law. . . . A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject. Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility.

*Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009).

Both Dr. Wyble and Dr. Barbour have testified by affidavit that they routinely evaluate patients for depression, anxiety, the need for psychiatric medication, and the need for pain management as part of their practices. (Defs.' Resp. Ex. 2, ECF No. 114-2; Defs.' Resp. Ex. 2, ECF No. 108-2.) The Court finds that these physicians are qualified to evaluate the plaintiff's need for psychiatric care, psychiatric medication, and pain management. The plaintiff's arguments concerning these opinions pertain to the weight that should be given to their testimony, not its admissibility. As a result, the plaintiff's Motions to Exclude are denied in this respect.

## CONCLUSION

For the foregoing reasons, the defendants' Motion to Exclude certain opinions given by Dr. George is denied. The defendants' request to exclude Dr. Bal's opinions concerning the plaintiff's chance of recovery is denied, but their request to exclude Dr. Bal's opinion concerning whether nerve transection is an accepted risk is granted. The plaintiff's request to exclude Dr. Wyble's opinions concerning the cause of the nerve damage is granted. The plaintiff's request for exclusion of Dr. Wyble and Dr. Barbour's opinions concerning the effects of long-term nerve compression is granted. However, the plaintiff's requests for exclusion of Dr. Wyble and Dr. Barbour's opinions concerning the surveillance video and the plaintiff's need for future psychiatric treatment and pain management are denied.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the defendants' [88] Motion to Exclude Certain Testimony of Dr. Eric George is **DENIED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the defendants' [90] Motion to Exclude Certain Testimony of Dr. Sonny Bal is **GRANTED IN PART AND DENIED IN PART**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the plaintiff's [93] Motion to Exclude Certain Proposed Opinion Testimony of Defendants' Expert Witness, Eric J. Wyble, M.D., is **GRANTED IN PART AND DENIED IN PART**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the plaintiff's [95] Motion to Exclude Certain Proposed Opinion Testimony of Defendants' Expert

Witness, Thomas M. Barbour, III, M.D., is **GRANTED IN PART AND DENIED IN PART**.

**SO ORDERED AND ADJUDGED** this the 8th day of April, 2020.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE